Harland Bartholomew v. Commissioner. Russell H. Riley v. Commissioner. Eldridge Lovelace v. Commissioner. Harry W. Alexander and Gladys B. Alexander v. Commissioner.
Bartholomew v. Commissioner
Docket Nos. 16918, 16919, 16920, 16929.
United States Tax Court
1950 Tax Ct. Memo LEXIS 219; 9 T.C.M. (CCH) 302; T.C.M. (RIA) 50090; April 10, 1950
Chase Morsey, Esq., for the petitioners. Marvin E. Hagen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined the following deficiencies in the income taxes of petitioners for the year 1944: Petitioner
Deficiency
Harland Bartholomew
$8,020.70
Russell H. Riley
1,483.22
Eldridge Lovelace
262.44
Harry W. Alexander and Gladys B.
Alexander
1,087.12
The sole question is whether R. Stuart *220 Royer joined with Harland Bartholomew & Associates as a partner or joint adventurer in the execution of the Norfolk-Portsmouth project. Findings of Fact The petitioners, Harland Bartholomew, Russell H. Riley, Eldridge Lovelace, and Harry Alexander and Gladys B. Alexander, are individuals residing at St. Louis, Missouri. They filed their respective income tax returns for the calendar year 1944 with the collector of internal revenue for the first district of Missouri at St. Louis, Missouri. On January 5, 1942, the petitioners, Harland Bartholomew, Russell H. Riley, Eldridge Lovelace, and Harry W. Alexander, were members of the partnership, Harland Bartholomew & Associates, City Planning Engineers, of St. Louis, Missouri. Prior to January 5, 1942, the partnership enjoyed a good reputation throughout the United States and had performed engineering work in a great many cities. The partnership usually employed local engineers and architects on local projects throughout the United States. Harland Bartholomew & Associates filed its partnership returns on the cash receipts and disbursements basis for the calendar years 1942, 1943 and 1944 with the collector of internal revenue for the *221 first district of Missouri, at St. Louis. In 1941 Harland Bartholomew & Associates performed engineering services for the Federal Works Agency in connection with a defense project at Fort Leonard Wood. In view of the satisfactory work performed on this project, Harland Bartholomew & Associates secured another contract with the Federal Works Agency of the United States Government in connection with a defense housing project at Norfolk-Portsmouth, Virginia. On or about January 1, 1942, Harland Bartholomew went to Washington, D.C., and conferred with Mr. Newman, assistant head of the Federal Works Agency, in regard to the Norfolk-Portsmouth project. On January 5, 1942, a written contract was entered into between the United States of America acting by and through the Federal Works administrator of the Federal Works Agency referred to as "Administrator", and Harland Bartholomew & Associates referred to as "Architect-Engineer". The contract provided for the performing of architectural engineering services by the partnership, Harland Bartholomew & Associates, in connection with the construction of prefabricated demountable dwelling units as part of a defense housing project at Norfolk-Portsmouth, *222 Virginia. The contract provided for a fee in the amount of $447,700 for services to be rendered by the partnership plus reimbursement for travel expenses within certain limitations. R. Stuart Royer, a consultant engineer from Norfolk, Virginia, was not a party to this contract. Subsequent to January 5, 1942, approximately twelve or fifteen supplemental contracts were entered into between Harland Bartholomew & Associates and the administrator of the Federal Works in addition to the principal contract. On January 18, 1942, Harland Bartholomew & Associates entered into an agreement with R. Stuart Royer, a consultant engineer from Norfolk, Virginia. The terms of said agreement are as follows: "This agreement made and entered into this… day of January, 1942 by and between Harland Bartholomew and Associates, Site Planners and Engineers of St. Louis, Missouri, hereinafter referred to as the Parties of the First Part, and R. Stuart Royer, Consulting Engineer of Richmond, Virginia, hereinafter referred to as the Party of the Second Part. "Section 1. The Parties of the First Part have been selected by the Defense Housing Division of the Federal Works Administration to have charge of *223 and be responsible for the making of topographical surveys, site plans, plans and specifications for all utilities and site improvements, and supervision of all utilities and demountable dwelling units on sites which will contain approximately 11,000 dwelling units in the Hampton Roads area of the State of Virginia. "Section 2. It is essential that the Parties of the First Part associate with a competent firm of engineers so that this work can be carried out with the maximum speed and efficiency. "Section 3. The party of the Second Part is a competent Engineer conversant with local conditions and problems in the Hampton Roads Area and has a staff of competent employees available for the surveying and for other phases of the program. "Section 4. The two Parties to this memorandum hereby agree to an association in which the Parties of the First Part will have control and be responsible for the entire project or projects and the details of the agreement including the amount of work, the financial remuneration therefor and the allocation of expenses will be decided and agreed upon at a later date. "Signed this 18 day of January, 1942." Subsequent to January 18, 1942, an oral *224 agreement was entered into between Harland Bartholomew & Associates and R. Stuart Royer. It provided that Royer was to be paid a per diem of $50 plus expenses and participate in the final profits. He was also to share in any losses. R. Stuart Royer performed engineering services on the main contract and all of the supplemental contracts except about three or four that called for architectural services. R. Stuart Royer did not contribute any capital to the Norfolk-Portsmouth project. In connection with the supplemental contracts calling for architectural services Harland Bartholomew & Associates engaged K. E. Wischmeyer, a member of a firm of architects in St. Louis, Missouri, to perform the architectural services required by the contracts. He received for his services a percentage of the profits from the contracts upon which he performed services. K. E. Wischmeyer was not considered a partner of Harland Bartholomew & Associates in connection with the Norfolk-Portsmouth project. Harland Bartholomew & Associates opened a bank account at Norfolk, Virginia. Signature cards were signed by the partners but not by R. Stuart Royer. As a result of the transfer of all the housing work *225 of the Federal Works Agency to the Public Housing Authority, and the failure of the latter to get necessary priorities for materials, the work on the project was delayed and was not completed until September 1943. On December 16, 1943, $32,434 was due to Harland Bartholomew & Associates for services and a bill for this amount was rendered to the Government. $23,434 was paid in May 1944. The remaining $9,000 was withheld because the Government believed Harland Bartholomew & Associates were responsible for the collapse of a roof. It was determined in 1945 that they were not responsible, and the $9,000 was paid to them in that year. These payments did not compensate Harland Bartholomew & Associates for a loss of approximately $39,000 sustained on the main contract. A claim was filed to recover this amount and a reasonable allowance for services, and legislation was enacted as a result of which the partnership received $58,000 in 1945 in settlement of this claim. On its income tax returns filed by Harland Bartholomew & Associates for the calendar years 1942, 1943 and 1944 the receipts and disbursements from the Norfolk-Portsmouth project were adjusted to a cash basis and consolidated *226 with other receipts and disbursements and no recognition was given to the Norfolk-Portsmouth project as a separate joint venture. The partnership return of Harland Bartholomew & Associates for 1942 listed the names of the partners as being Harland Bartholomew, Russell H. Riley and Harry W. Alexander and for 1943 and 1944, Harland Bartholomew, Russell H. Riley, Harry W. Alexander and Eldridge Lovelace. No partnership returns were ever filed listing R. Stuart Royer as a partner or joint adventurer of Harland Bartholomew & Associates. On its partnership return for 1943 Harland Bartholomew & Associates deducted from gross income as ordinary and necessary expense an item entitled "Supervision R. Stuart Royer" in the amount of $1,459.65. The books of account of Harland Bartholomew & Associates for the Norfolk-Portsmouth project were kept on the accrual method of accounting. A final audit taken from the original books and records was prepared by Waller & Woodhouse, Certified Public Accountants, of Norfolk, Virginia, covering the period of its operation from February 1, 1942, to September 30, 1943. A summary of the audit is as follows: Harland Bartholomew & Associates
Summary of Income
Net profit from all contracts
$ 43,171.40
Settlement for loss on main contract
58,000.00
Total net income
$101,171.40
Royer's share of net profits
$ 2,699.85
Per diem paid to Royer ($50.00 a day)
6,362.61
Royer's share of settlement on main
contract
5,800.00
Total amount paid Royer
$ 14,862.46
Harland Bartholomew & Associates
Partial Summary of Expenses
Direct expenses by contracts for the
period from February 1, 1942 to
September 30, 1943: Main contract WA. 1216
Supervision, R. S. Royer
$ 5,933.58
Supervision, Partners Harland
Bartholomew
375.00
R. H. Riley
868.75
Harland Bartholomew & Associates
Partial Summary of Accounts Payable
Accounts Payable, trade creditors: Sept. 30, 1943
Due to R. S. Royer, nature: Share of profits, certain contracts
$ 2,699.85
Due to B. F. Mitchell, architect's
services
225.00
Due to K. S. Wischmeyer, archi-
tect's services
178.79
Expenses: H. W. Alexander
31.72
(H. W. Alexander was not listed as
a trade creditor)
*227 Harland Bartholomew & Associates and R. Stuart Royer did not intend to join together for the purpose of carrying on the Norfolk-Portsmouth project as a joint venture. Opinion Section 3797(a)(2) of the Internal Revenue Code provides that the term "partnership" includes, among other things, a joint venture. The term "joint venture" is not defined in the Internal Revenue Code. "The outstanding difference between a joint adventure and a partnership is that the former relates to a single transaction, although it may comprehend a business to be continued over several years, while the latter relates to a general and continuing business of a particular kind * * *." 30 Am. Jur. 679-680. The relationship between Harland Bartholomew & Associates and R. Stuart Royer was confined to a single transaction - the Norfolk-Portsmouth project. The question to be decided in these proceedings is whether the Norfolk-Portsmouth project was a separate joint venture. If it was, the net income derived from this project could be reported on the partnership returns of Harland Bartholomew & Associates on the accrual basis as the books of the project were kept on that basis. If not, *228 the net income from the project must be reported on the partnership returns on its regular cash receipts and disbursements basis. A "joint venture" exists "when two or more persons combine in a joint business enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits and losses of the enterprise, and that each is to have a voice in its control and management." Chisholm v. Gilmer, 81 Fed. (2d) 120, 124. Joint ventures and partnerships are so similar in character that they are usually tested by the same rules. 48 C.J.S. 808. In Commissioner v. Tower, 327 U.S. 280, where the government questioned the existence of a partnership for tax purposes, the court said: "* * * When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution *229 of its provisions.' * * * We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes. * * *" And in Commissioner v. Culbertson, 337 U.S. 733, after referring to the above quotation from the Tower case, the court said: "The question is * * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" The evidence discloses that the contract for the Norfolk-Portsmouth project was entered into on January 5, 1942, between the Federal Works administrator, Federal Works Agency, and Harland Bartholomew & Associates, a partnership composed of the petitioners herein. Royer was not a member of this partnership. His services were solicited *230 by the partnership subsequent to January 5, 1942, because the Federal Works administrator asked that the Virginia engineer be taken in as an associate. The argument between the partnership and Royer, dated January 18, 1942, specifically provided that the partnership "will have control and be responsible for the entire project or projects" and that the "details of the agreement including the amount of work, the financial remuneration therefor and the allocation of expenses" would be decided and agreed upon at a later date. According to the testimony of petitioner Harland Bartholomew an oral agreement was entered into between the partnership and Royer which provided that the latter would be paid a per diem of $50 plus expenses and a percentage of the final profits realized on the project, and that Royer was also to share in any losses. All business was transacted in the name of the partnership and the bank account was carried in its name. The partnership contributed all of the capital for the operation of the project and paid all the expenses. The compensation paid Royer was taken as a deduction on the partnership returns, and the partnership never filed a return in which it treated *231 Royer as a partner or joint adventurer. The books and records of the project show the amount due Royer as an "account payable due trade creditors" rather than as a part of the undistributed earnings. Royer received a share of profits only on projects on which he performed engineering services, while the individual petitioners received a share of the profits on all of the projects. In a joint venture "there is usually joint participation in the management and conduct of the enterprise, or there is the right of mutual control". 48 C.J.S. 810. Here the sole control and responsibility for the entire project or projects reposed in the partnership. While it is true that sharing of profits and losses is an important factor in determining whether a joint venture exists, it is not conclusive. Seymour v. Wildgen, 137 Fed. (2d) 160, 162. The decisive question is, as the Supreme Court pointed out in Commissioner v. Tower, supra, and Commissioner v. Culbertson, supra, whether the parties really and truly intended to join together in the present conduct of the enterprise as a joint venture. After a careful consideration of all of the evidence submitted we *232 have reached the conclusion that they did not, and have made a finding to this effect. It follows from this finding that the respondent correctly determined that the income from the Norfolk-Portsmouth project should be reported on the partnership return for 1944 on the cash receipts and disbursements basis of accounting used by the partnership. Decisions will be entered for the respondent.